# No. 13-4049

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

ROSALYN NEWDOW, KENNETH BRONSTEIN, BENJAMIN DREIDEL, NEIL GRAHAM, JULIE WOODWARD, JAN DOE, PAT DOE, DOE CHILD 1 AND DOE CHILD 2, ALEX ROE, DREW ROE, ROE CHILD 1, ROE CHILD 2, ROE CHILD 3, VAL COE, JADE COE, COE CHILD 1 AND COE CHILD 2, NEW YORK CITY ATHEISTS, FREEDOM FROM RELIGION FOUNDATION,

*Plaintiffs-Appellants*,

v.

UNITED STATES OF AMERICA, RICHARD A. PETERSON, Deputy Director, U.S. Mint, LARRY R. FELIX, Director, Bureau of Engraving and Printing, JACOB J. LEW, Secretary of the Treasury,

*Defendants-Appellees*,

CONGRESS OF THE UNITED STATES OF AMERICA, TIMOTHY F. GEITHNER, Secretary of the Treasury,

*Defendants*.

On Appeal from the United States District Court
for the Southern District of New York

**Brief *Amicus Curiae* of The Becket Fund for Religious Liberty
in support of Defendants-Appellees**

Eric C. Rassbach
Eric S. Baxter
*The Becket Fund for Religious Liberty*
*3000 K St. N.W., Ste. 220*
*Washington, DC 20007*
*(202) 955-0095*
*Counsel for* Amicus Curiae

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, The Becket Fund for Religious Liberty states that it has no parent corporation and that no publicly held corporation owns any part of it.

        /s/ Eric C. Rassbach

Eric C. Rassbach
*The Becket Fund for*
* Religious Liberty*
*3000 K St. N.W., Ste. 220*
*Washington, DC 20007*
*(202) 955-0095*

*Counsel for* Amicus Curiae

ii

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ...................ii

TABLE OF CONTENTS.......................................................................iii

TABLE OF AUTHORITIES ............................................................. v

INTEREST OF THE *AMICUS* ......................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT.............. 3

ARGUMENT ................................................................................... 6

I.  The Motto and its display on the currency is neither an
    establishment as originally understood nor as recognized
    by this Court........................................................................... 6

    A. At the founding, an establishment consisted of
       government control, government coercion, government
       funding, or assignment of government powers to church
       authorities........................................................................ 7

    B. The Motto and its display on the currency do not fall
       within any recognized category of establishment...................... 8

       1. The Motto and its display do not constitute
          impermissible government funding. ...................................... 9

       2. The Motto and its display do not constitute government
          control over religious groups' practices. .............................. 10

       3. The Motto and its display on the currency are not
          government coercion of private parties to engage
          in religious activity. ......................................................... 11

       4. The Motto and its display on the currency do not
          impermissibly cede government powers to religious
          organizations. ................................................................. 13

CONCLUSION .................................................................. 14

CERTIFICATE OF COMPLIANCE .................................... 16

CERTIFICATE OF SERVICE ......................................... 17

# TABLE OF AUTHORITIES

## CASES

*Commack Self-Serv. Kosher Meats, Inc. v. Weiss,*
294 F.3d 415 (2d Cir. 2002) .................................................... 13

*DeStefano v. Emergency Housing Group Inc.,*
247 F.3d 397 (2nd Cir. 2001) .................................................. 9

*Elk Grove Unified Sch. Dist. v. Newdow,*
542 U.S. 1 (2004) .................................................................. 4, 5

*Freedom From Religion Foundation v. Hanover School District,*
626 F.3d 1 (1st Cir. 2010) .................................................... 1, 4

*Incantalupo v. Lawrence Union Free Sch. Dist. No. 15,*
380 F. App'x 59 (2d Cir. 2010) ............................................. 10

*Larkin v. Grendel's Den, Inc.,*
459 U.S. 116 (1982) .............................................................. 13

*Lee v. Weisman,*
505 U.S. 577 (1992) .............................................................. 12

*Newdow v. Bush,*
355 F. Supp. 2d 265 (D.D.C. 2005) ...................................... 4, 5

*Newdow v. Bush,*
89 Fed. Appx. 624 (9th Cir. 2004) ......................................... 4

*Newdow v. Congress of the U.S.,*
No. CIVS-00-0495-MLS/PAN, (E.D. Cal. 2000),
*rev'd*, 328 F.3d 466 (9th Cir. 2003) ....................................... 4

*Newdow v. Eagen,*
309 F. Supp. 2d 29 (D.D.C.), *dismissed for want of prosecution,*
2004 WL 1701043 (D.C. Cir. 2004) ....................................... 5

v

*Newdow v. Lefevre,*
  598 F.3d 638 (9th Cir. 2010) ..................................................... 5

*Newdow v. Rio Linda Union School District,*
  597 F.3d 1007 (9th Cir. 2010) ...................................... 1, 4, 11

*Newdow v. Roberts,*
  602 F.3d 102 (D.C. Cir. 2010) ............................................ 4, 5

*Newdow v. United States Congress,*
  435 F. Supp. 2d 1066 (E.D. Cal. 2006) ................................ 5

*Newdow v. United States,*
  No. 98-CV-6585 (S.D. Fla. 1998),
  *aff'd,* 207 F.3d 662 (11th Cir. 2000) ..................................... 4

*Pleasant Grove City v. Summum,*
  555 U.S. 460 (2009) ............................................................... 12

*Rweyemamu v. Cote,*
  520 F.3d 198 (2d Cir. 2008) ................................................. 10

*School District of Abington Township v. Schempp,*
  374 U.S. 203 (1963) .......................................................... 3, 15

*W. Va. State Bd. of Educ. v. Barnette,*
  319 U.S. 624 (1943) .............................................................. 13

*Warner v. Orange Cnty. Dep't of Prob.,*
  115 F.3d 1068 (2d Cir. 1996) ......................................... 11, 12

*Zelman v. Simmons–Harris,*
  536 U.S. 639 (2002) .............................................................. 10

vi

Other Authorities

Michael W. McConnell, *Establishment and Disestablishment at the Founding, Part 1: Establishment of Religion,* 44 Wm. & Mary L. Rev. 2105 (2003) .................................................. 7, 8

## INTEREST OF THE *AMICUS*[1]

The Becket Fund for Religious Liberty is a non-profit, public-interest legal and educational institute that protects the free expression of all religious traditions. The Becket Fund has represented agnostics, Buddhists, Christians, Hindus, Jews, Muslims, Santeros, Sikhs, and Zoroastrians, among others, in lawsuits across the country and around the world. The Becket Fund has frequently intervened in cases involving Establishment Clause abuse. For example, the Becket Fund represented the successful defendant-intervenors in *Newdow v. Rio Linda Union School District*, 597 F.3d 1007 (9th Cir. 2010) and *Freedom From Religion Foundation v. Hanover School District*, 626 F.3d 1 (1st Cir. 2010), which were both challenges to the Pledge of Allegiance brought by counsel for Appellants here.

The Becket Fund is concerned that the approach urged by Appellants would turn the Establishment Clause into an instrument of hostility towards any expression, governmental or otherwise, that smacks of the

---

[1]  All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

religious. The Establishment Clause does not require the Court or any governmental agency to adopt as official government policy Appellants' personal hostility towards the word "God." Indeed, the Establishment Clause forbids the very hostility towards religion that Appellants would enshrine in it.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Fifty years ago, Justice Goldberg wrote a concurring opinion in *School District of Abington Township v. Schempp* that warned against overreading the Constitution's mandate of neutrality:

> It is said, and I agree, that the attitude of government toward religion must be one of neutrality. But untutored devotion to the concept of neutrality can lead to invocation or approval of results which partake not simply of that noninterference and noninvolvement with the religious which the Constitution commands, but of a brooding and pervasive devotion to the secular and a passive, or even active, hostility to the religious. Such results are not only not compelled by the Constitution, but, it seems to me, are prohibited by it.

*Id.*, 374 U.S. 203, 306 (1963) (Goldberg, J., concurring). This appeal presents precisely the attitude—one might call it the "paranoid style"— that Justice Goldberg warned against. Appellants' brief demonstrates their brooding hostility towards religion. They brood over the cases they believe fit their theory of the law and they brood over the cases that don't. And they brood over their past losses in court, as the sarcastic tone of their opening brief indicates. Indeed, it is clear that this lawsuit

is simply a continuation of counsel Dr. Newdow's longtime (and as yet unsuccessful) efforts to purge the word "God" from public life.[2]

---

[2] Dr. Newdow has often sued to remove the phrase "under God" from the Pledge of Allegiance:

- *Newdow v. United States*, No. 98-CV-6585 (S.D. Fla. 1998), *aff'd*, 207 F.3d 662 (11th Cir. 2000) (table case);

- *Newdow v. Congress of the U.S.*, No. CIVS-00-0495-MLS/PAN, (E.D. Cal. 2000), *rev'd*, 328 F.3d 466 (9th Cir. 2003), *rev'd sub nom. Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004);

- *Newdow v. Rio Linda Union School District*, 597 F.3d 1007 (9th Cir. 2010);

- *Freedom From Religion Foundation v. Hanover School District*, 626 F.3d 1 (1st Cir. 2010).

He has sued to prevent both President Bush and President Obama from saying "So help me God" at the end of the inaugural oath:

- *Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C.), *emergency motion for injunction pending appeal denied*, 2005 WL 89011 (D.C. Cir.), *application for injunction pending appeal denied*, No. 04A623 (2005) (regarding 2005 inauguration);

- *Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) (regarding 2009 inauguration).

He has sued to try to ban any invocation or benediction at inaugural ceremonies:

- *Newdow v. Bush*, 89 Fed. Appx. 624 (9th Cir. 2004) (regarding 2001 inauguration);

4

But the Supreme Court has never adopted Appellants' view, Br. 9, that mere governmental use of the word "God" results in a lack of neutrality. Instead the proper question for this Court to address is whether the Motto, or its display on the currency, represents an establishment of religion.

---

- *Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C. 2005);

- *Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010).

He has sued to try to prohibit Congress from hiring legislative chaplains and engaging in legislative prayer:

- *Newdow v. Eagen*, 309 F. Supp. 2d 29 (D.D.C.), *dismissed for want of prosecution*, 2004 WL 1701043 (D.C. Cir. 2004) (claiming right to observe government without being forced to "confront religious dogma he finds offensive").

And although he told Justice O'Connor at oral argument that the Supreme Court could "easily distinguish" use of "In God We Trust" on currency from recitation of the Pledge, Transcript of Oral Argument, *available at* http://www.supremecourt.gov/oral_arguments/ argument_transcripts/02-1624.pdf at 47, *Elk Grove*, 542 U.S. 1), he has brought this lawsuit and previously sued to remove "In God We Trust" from United States currency:

- *Newdow v. United States Congress*, 435 F. Supp. 2d 1066 (E.D. Cal. 2006), *aff'd sub nom. Newdow v. Lefevre*, 598 F.3d 638 (9th Cir. 2010).

Despite the use of considerable judicial and attorney resources, Dr. Newdow has not prevailed in any of these lawsuits.

5

So what did the Founders mean when they referred to an "establishment of religion"? As described in detail below, history shows that the Founders recognized the hallmarks of an establishment as government control of churches, government coercion, government funding of churches, or assignment of government powers to church authorities. And because the Motto does not plausibly fall into any one of these categories, it is not an "establishment of religion."

## ARGUMENT

## I. The Motto and its display on the currency is neither an establishment as originally understood nor as recognized by this Court.

As understood by the Founders and as interpreted by this Court, establishment of religion consists of several well-defined practices centered on government coercion of religious belief or practice. The Motto and its display on the currency falls far outside these categories of practices and thus does not—and *cannot*—inflict injury on Appellants.

**A. At the founding, an establishment consisted of government control, government coercion, government funding, or assignment of government powers to church authorities.**

At the time of the founding, the "essential . . . ingredients" of an establishment took one of four forms. *See* Michael W. McConnell, *Establishment and Disestablishment at the Founding, Part 1: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2118, 2131 (2003). The first element of an establishment was public financial support of the church. This took many forms—from compulsory tithing, to direct grants from the public treasury, to specific taxes, to land grants. *Id.* at 2147. The second element of an establishment was state control over the institutional church. This control manifested itself in two ways that are startling to modern eyes: the control of religious doctrine and the appointment and removal of religious officials. *Id.* at 2132. The third feature of establishment was the coercion of individuals' religious beliefs and practices. This took three main forms: compelled church attendance, prohibition on worship in dissenting churches, and exclusion of dissenters from political participation. *Id.* at 2144, 2159, and 2176. The last element of establishment was government assignment of important civil functions to church authorities. States

7

used religious officials and religious institutions for social welfare, elementary education, marriages, public records, and the prosecution of certain moral offenses. *Id.* at 2171-76.

In sum, an "establishment of religion" had a very specific meaning for the Founders. It consisted of government funding of the church, government control over doctrine and personnel of the church, government coercion of religious belief and practice, and government use of the state church to carry out civil functions. Laws imposing these elements created an established church. Laws that lacked these elements did not.

**B. The Motto and its display on the currency do not fall within any recognized category of establishment.**

This Court's Establishment Clause jurisprudence is in line with the historical understanding of establishments. This Court has repeatedly recognized that there are potential Establishment Clause problems with government funding of religious entities, government control over religious doctrine, government coercion of religious practices, or government use of religious entities to carry out civil functions. But

because the Motto and its display on the currency involve none of these elements, the Motto does not violate the Establishment Clause.

### 1. *The Motto and its display do not constitute impermissible government funding.*

The first element of establishment is government financial support of a church or other religious group. In *DeStefano v. Emergency Housing Group Inc.*, 247 F.3d 397 (2nd Cir. 2001), this Court considered whether state funding for the religiously-themed Alcoholic Anonymous (A.A.) program at a private alcoholic treatment facility violated the Establishment Clause. This Court was clear that "the Establishment Clause prohibits the expenditure of funds to aid in the establishment of religion." *Id.* at 407. It acknowledged, however, that the inquiry was fact-specific and held that, while the mere inclusion of the A.A. program at the facility was constitutional, the funding would have been problematic if, for example, the facility was *required* to integrate religious organizations into its treatment programs in order to receive funding. *Id.* at 410.

Elsewhere, this Court has noted that if a "government program is 'neutral with respect to religion,'" it "'is not readily subject to challenge

under the Establishment Clause.'" *Incantalupo v. Lawrence Union Free Sch. Dist. No. 15*, 380 F. App'x 59, 62 (2d Cir. 2010) (quoting *Zelman v. Simmons–Harris,* 536 U.S. 639, 652 (2002)). Here, the Motto is not a practice of a private religious party that is being funded by the government, but a form of government speech. No private religious group is being aided with funds.

### 2. *The Motto and its display do not constitute government control over religious groups' practices.*

The second element of establishment is government interference in the doctrine or governance of religious institutions. A prime example of this type of violation is *Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008). There, an African-American Catholic priest brought a race discrimination claim against the Roman Catholic Diocese and its Bishop. This Court held that if a court overruled the church's decision about a ministerial employee, it would become impermissibly entangled "with religious doctrine." *Id.* at 209.

This element of establishment is completely absent here. The Motto has no impact on church polity, internal church decisions, or church doctrine. Nor does it interfere with internal church governance.

And the Motto does not declare official state religious doctrine. Like the Pledge, the Motto is a statement of "the political philosophy of the Founding Fathers that God granted certain inalienable rights to the people which the government cannot take away." *Rio Linda*, 597 F.3d at 1028. By contrast, the Church of England—the kind of establishment the Founders had in mind—literally had its catechism enacted by Parliament.

### 3. The Motto and its display on the currency are not government coercion of private parties to engage in religious activity.

The Establishment Clause likewise forbids the government from coercing an individual to engage in religious activity or ceremony contrary to her beliefs. This Court invoked that principle in *Warner v. Orange Cnty. Dep't of Prob.*, 115 F.3d 1068 (2d Cir. 1996). In that case, a probationer facing a criminal sentence for drunk driving was required as a condition of probation to participate in A.A. meetings, which included "explicit religious content" and "repeatedly turned to religion as the basis of motivation." *Id.* at 1075, 1076. The Court held that the religious content of the meetings, coupled with both the county's failure to provide alternative therapy programs and the threat of incarceration

to the probationer if he failed to participate, violated the Establishment Clause: "Our ruling depends . . . on the 'fundamental limitation[ ] imposed by the Establishment Clause' that bars government from 'coerc[ing] anyone to support or participate in religion or its exercise.'" *Id.* at 1075 (quoting *Lee v. Weisman*, 505 U.S. 577, 587 (1992)).

Again, this element of establishment is completely absent here. There is no coercion: no one is forced to speak the words of the Motto, or to participate in a religious ceremony. While some may find the Motto of great religious significance, "it does not follow that the [government], by displaying [the Motto], intends to convey or is perceived as conveying the same 'message.'" *Pleasant Grove City v. Summum*, 555 U.S. 460, 476 n.5 (2009).

Appellants say that they must participate in some way by merely carrying the currency or witnessing it. But they are not being forced to participate in a religious ceremony—they are at most required to witness or be aware of a government speech with which they happen to disagree. Thus even if the Motto were a religious statement—something the government denies—there would be no coercion. Mere contact is not coercion, just as having to see others recite a Pledge one disagrees with

12

is not coercion. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) (relief for objecting Jehovah's Witnesses was to witness others recite the Pledge but not be forced to do so themselves).

### 4. The Motto and its display on the currency do not impermissibly cede government powers to religious organizations.

The last element of establishment is the assignment of important civil functions to religious authorities. In *Commack Self-Serv. Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 418 (2d Cir. 2002), this Court struck down New York's kosher fraud statutes, which defined "kosher" as food that has been "prepared in accordance with the Orthodox Hebrew religious requirements." The statutory reference to Orthodox standards led the state to delegate its power to the Orthodox rabbis who sat on the state advisory board on kosher law enforcement. *Id.* at 424. As this Court explained, not only did the laws unconstitutionally prefer the Orthodox definition of "kosher" over other ones, but they also ran "afoul of 'the core rationale underlying the Establishment Clause[, which] is preventing 'a fusion of governmental and religious functions.'" *Id.* at 428 (quoting *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 126 (1982)).

Here, there is no such fusion of governmental and religious functions. No religious body has been tasked with carrying out functions—such as producing the currency—that properly belong to the federal government alone.

\*     \*     \*

None of the four characteristics of what the Founders would have seen as an establishment are present with respect to the Motto or its display on the currency. Government is not funding a church, it is not controlling a church, it is not coercing someone to adopt a particular set of religious beliefs, and it is not fusing itself with a religious body. Thus both in the Founders' conception and in accordance with this Court's and the Supreme Court's precedents, the federal government's Motto policies are no establishment of religion.

## CONCLUSION

Justice Goldberg ended his *Schempp* concurrence with this insight:

> The First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact. It is of course true that great consequences can grow from small beginnings, but the measure of constitutional

14

adjudication is the ability and willingness to distinguish between real threat and mere shadow.

*Schempp*, 374 U.S. at 308 (Goldberg, J., concurring). Under any "realistic measure," the Motto and its display on the currency create no danger of a government establishment of religion. Indeed, it is only Appellants who have taken a "mere shadow" and elevated it to a "real threat" in their own minds. *Id.* The Court should reject Appellants' invitation to adopt a paranoid and hostile view of the word "God."

*Amicus* therefore respectfully urges the Court to affirm the decision below.

Respectfully submitted,

 /s/ Eric C. Rassbach
Eric C. Rassbach
Eric S. Baxter
*The Becket Fund for*
 *Religious Liberty*
*3000 K St. N.W., Ste. 220*
*Washington, DC 20007*
*(202) 955-0095*

*Counsel for* Amicus Curiae

15

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,696 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ Eric Rassbach
Eric Rassbach
Counsel for *Amicus Curiae*

16

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on January 24, 2014.

I certify that all participants in the case have been served a copy of the foregoing by the appellate CM/ECF system or by other electronic means.


January 24, 2014                    /s/ Eric Rassbach
                                    Eric Rassbach
                                    Counsel for *Amicus Curiae*